𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

RICHARDSON, ET ALS V. GARDNER, TRUSTEE.

December 1, 1920.

Absent, Burks, J.

1. APPEAL AND ERROR—*Final Judgments and Decrees—Definition.*— A final decree is one which disposes of the whole subject, gives all the relief that was contemplated, provides with reasonable completeness for giving effect to the sentence, and leaves nothing to be done in the cause save to superintend *ministerially* the execution of the decree.

2. APPEAL AND ERROR—*Final Judgments and Decrees—Interlocutory Decrees.*—An interlocutory decree may adjudicate the principles of a cause, as well as a final decree, hence, complete evidence of finality is not afforded by the adjudication of such principles.

3. APPEAL AND ERROR—*Final Judgments and Decrees—Decree Ordering Sale of Land, but not Directing Application of Proceeds.*—A decree in a suit to subject a debtor's lands to the claims of his creditors, with certain reservations confirmed a commissioner's report of liens, determined the order in which the property mentioned in the same should be subjected, and directed that the lands ascertained to be liable should be sold by designated commissioners, upon the terms prescribed, with instructions to the commissioners to report their proceedings to the court. But the decree did not direct the application of the proceeds of sales of the lands ordered to be sold. It remained for the court at a later period to direct this application, pass upon the reports of sales, and possibly approve or reject an upset bid, or bids, which duties would require the exercise of judicial discretion.

   *Held:* That while the decree adjudicated the principles of the controversy, it was interlocutory and not final.

4. JUDGMENTS AND DECREES—*Interlocutory Decrees—Control of Court Over Proceedings—Petition to Rehear.*—Until a final decree is entered and the court adjourned, all the proceedings from the first decree onward, though had or entered at former

terms of the court, are interlocutory and in the breast of the court. Where, therefore, before final decree, any material error is discovered in any decree, the court on having its attention directed to the error, or the newly discovered evidence, is free to hear the parties, and to make such correction as justice demands. This is done by means of a petition to rehear.

5. INTERLOCUTORY DECREES—*Rehearing—Bill of Review—Readiness of Court to Grant Relief.*—Being in the ·breast of the court, interlocutory decrees do not constitute final records, and hence they are subject to alteration and amendment, in the sound discretion of the court, at any future term, and until the entry of the final decree. Hence, where considerations of justice require it, there is not the same judicial reluctance to grant relief under a petition· to rehear, as in the case of a bill of review.

6. REHEARING—*Whether a Petition, one for Rehearing or Review.*— In the instant case, a suit to subject the lands of a debtor to the claims of his creditors, a decree was entered confirming a commissioner's report and ordering the sale of certain lands to satisfy claims of the creditors, but not directing the application· of the proceeds of the sales. Sometime after this decree certain parties presented to the court a petition for · rehearing, styled an "amended petition for a rehearing on injunction." This petition alleged that the decree was erroneous for errors appearing on the face of the record, because it established certain judgments as binding liens upon the lands of the petitioners which upon the face of the commissioner's report did not appear to have been docketed and indexed as required by the statute. The trial court does not appear to have undertaken to determine whether the petition was a bill of review or one to rehear, but sustained a demurrer to it, whether considered as the one or the other.

*Held:* That the petition was one to rehear.

7. JUDGMENTS AND DECREES—*Docketing—Christian Names—Lien of Judgment.*—Sections 3560, Code of 1904; 3570, Code of 1887; 3561, Code of 1904, and 3183, Code of 1904, with respect to indexing and docketing judgments, require the docket to show the names of all the parties to the judgment. These names must be set out, and the omission of the Christian name is fatal to the lien of the judgment.

8. JUDGMENTS AND DECREES—*Docketing—Indexing.*—Sections 3560, Code of 1904; 3570, Code of 1887; 3561, Code of 1904, and 3183, Code of 1904, with respect to indexing and docketing judgments, require that a docketed judgment shall be indexed

in the name of each defendant, and should not be regarded as docketed as to any defendant in whose name it is not indexed.

9. JUDGMENTS AND DECREES—*Lien of Judgment—Docketing—Commissioner's Report.*—A commissioner's report that reports a judgment as a subsisting lien against land held by such a purchaser, · without showing, or even stating, that the judgment has ever been docketed, reports a conclusion of law that a court should not be content to accept.

10. REHEARING—*Time in which Petition Must be Filed—Laches.*— Errors apparent on the face of the record, in case of an interlocutory decree, can be corrected by a petition to rehear long after the errors have been committed. There is no prescribed time in which such a petition must be filed, though a complainant may be denied relief on the grounds of laches.

Appeal from a decree of the Circuit Court of Pulaski county. Decree for defendant. Complainants appeal.

*Reversed.*

The opinion states the case.

*W. B. Snidow, Jno. S. Draper, Jr., Jackson & Henson,* and *Harless & Colhoun,* for the appellants.

*H. C. Gilmer,* for the appellee.

SAUNDERS, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Pulaski county, entered on September 10, 1918, in the chancery cause of *Robert L. Gardner, assignee, etc.* v. *R. P. Harris, et als.*

This suit has been pending for many years in the court, *supra.* Originally it was in the name of *R. L. Gardner, trustee of G. W. Ould* v. *R. P. Harris and Carper, Admr.* Several amended bills have been filed from time to time, and

a practical consolidation appears to have been effected of the original suit of Gardner, trustee, and of another suit of *C. R. St. Clair* v. *R. P. Harris.* In the ultimate the consolidated proceedings appear on the docket of the circuit court under the style of *R. L. Gardner, Assignee, etc.* v. *R. P. Harris, et als.* The general purpose of these various bills was to subject the lands of R. P. Harris to the claims of his creditors.

Harris appears to have owned a large amount of real estate and to have conducted his affairs in a very loose and irregular fashion. At different times, judgments amounting in the aggregate to a considerable sum were recovered against him. His lands were alienated in numerous parcels, and by different and successive conveyances, requiring a tedious and elaborate account to be taken to arrive at the order of their respective liability to the liens considered to be established.

In the course of the long drawn out and unduly protracted proceedings in these causes, various answers were filed and an account directed to be taken by commissioner Morton. This account appears to have been thrice recommitted. The last report, filed on August 22, 1917, is a most elaborate, comprehensive and painstaking document. In this report commissioner Morton includes as liens upon the estate of R. P. Harris two judgments, one of *G. W. Ould* v. *Moon and Harris,* and the other of *G. W. Ould* v. *Moon, Hauley & Co.* These judgments are reported as belonging to R. L. Gardner. This report was excepted to by various parties on various grounds.

The case came on to be heard on November 16, 1917, on the report, *supra,* and exceptions, and various papers recited in the decree. From a recital in this decree it appears that Geo. T. Richardson and Sarah Galway had tendered a petition to rehear and review, which the court declined to allow to be filed. The decree, with certain indicated reser-

vations, overrules the exceptions to the report and confirms the same. Further, it was provided that unless the defendants, or some one for them, should within thirty days from the rising of the court pay off the judgment liens and costs of the suit, certain designated commissioners were directed to sell the lands derived from the defendant, Harris, pursuant to the terms and directions contained in the decree.

Sometime in April, 1918, Geo. T. Richardson, R. C. Croy and others presented to his honor, A. A. Campbell, judge of the Circuit Court for Pulaski county, a bill for an injunction. This bill referred to the decree of November, 1917, *supra,* and the report of commissioner Morton, alleging that the judgments of *Ould* v. *Moon, Hawley & Co.,* and of *Same* v. *Moon and Harris,* were never properly indexed and docketed, and not being notice to complainants as purchasers for value were, as to such complainants, void and of no effect. Complainants averred further, that they were entitled to have the decree of November, 1917, reviewed, and the same annulled and rescinded so far as sale of their property was concerned. Alleging irreparable injury and lack of adequate remedy elsewhere, complainants prayed an injunction against the sale of their property until the further order of the court. On April 16, 1918, Judge Campbell granted an injunction according to the prayer of complainants' bill.

On May 13, 1918, Richardson, Croy and others presented to the Circuit Court for Pulaski county a petition for rehearing, styled in the record as an "amended petition for a rehearing on injunction." This petition, after reciting in detail the steps that had been taken in the various proceedings against R. P. Harris, alleged that the decree of November, 1917, was erroneous because of errors of fact and law apparent on the face of the record, and because of other "facts and evidence," presented to the court in the original and amended petition.

The amended petition alleges specifically that the following errors appear on the face of the record, namely: "That the report of the commissioner fails to show that the alleged judgments in favor of R. L. Gardner, assignee of G. W. Ould, as set out at page 7 of said report, one being against Moon and Harris, and amounting to $854.83, as of August 20, 1917, and the other being against Moon, Hawley & Co., and being for the sum of $1,475.12, as of August 20, 1917, were ever in fact docketed on the judgment lien docket of the circuit court of your honor's county, said report failing to affirmatively claim or show that the two Ould judgments were ever in fact indexed, or docketed; and it being discovered after the rendition of said alleged erroneous decree that the said Ould judgments were never docketed as required by the law of Virginia in such cases made and provided, in that the first Ould judgments in said cases were docketed against Moon and Harris, and Moon, Hawley & Co., respectively, not showing alleged individual members of said partnership, which original judgments were afterwards annulled, and the alleged Ould judgments which are sought to be enforced were docketed upon the then current judgment lien docket as against the said Moon and Harris, and said Moon, Hawley & Co., respectively, and without setting out the alleged members of said partnerships, not showing that the said R. P. Harris was a partner in either of said firms, and said second Ould judgments sought in said causes to be enforced, though docketed in the manner aforesaid, were never in fact indexed, an affidavit from J. N. Bosang, clerk of your honor's court, which explains the manner of the docketing and indexing of said Ould judgments being herewith filed and marked as Exhibit C, and asked to be read as a part of this amended petition."

The interest of the petitioners in the subject matter consists in the fact that the judgments, *supra*, were established as liens by the decree complained of, and the lands of said petitioner directed to be sold to discharge the same.

The petitioners also "excepted to the report of Commissioner Morton, undertaking to list the said Ould judgments as liens against the property of petitioners, for the. reason that the said judgments are neither indexed nor docketed as the law requires."

The plaintiff objected to the filing of the foregoing petition and exhibits therewith, and demurred to and moved to dismiss the same, and to dissolve the temporary injunction theretofore granted. By consent of parties the cause was made a vacation cause, and subject to certain agreed stipulations was continued. At a court held in September, 1918, the court allowed the petition to be filed, but proceeded to sustain the demurrer to the same, "whether considered as a bill of review, or a petition to rehear," and ordered it to be dismissed. In the same decree the court dissolved the injunction theretofore awarded, and directed the commissioners to carry out the decree of sale of November, 1917. From this decree an appeal and supersedeas was allowed by one of the judges of this court.

[1, 2] The appellee makes a motion in this court to dismiss the appeal on the ground that the decree of November 16, 1917, being a final decree, the petition for an appeal presented on April 16, 1919, was not within the time prescribed by the statute. This point is well taken, if it be true that the decree of November 16, 1917, was a final decree.

"It is not always an easy matter to determine whether a particular decree is final or not. Nor are the courts fully in accord as to the true characteristics of such a decree," but applying certain *criteria*, well established by the Virginia precedents, to the decree in question, we entertain no doubt that this decree is interlocutory and not final. An interlocutory decree may adjudicate the principles of a cause as well as a final decree; hence, complete evidence of finality is not afforded by the adjudication of such principles. Mr. Minor's definition of a final decree is in these words: "A

final decree is one which disposes of the whole subject, gives all the relief that was contemplated, provides with reasonable completeness for giving effect to the sentence, and leaves nothing to be done in the cause save to superintend *ministerially* the execution of the decree." IV Minor's Inst., 1066, 1506. (Italics supplied.)

[3] The decree of November, 1917, does not so completely dispose of the whole subject that thenceforward the court would exercise merely ministerial superintendence over the execution of said decree. The court in that decree, with certain reservations, confirms the commissioner's report, determines the order in which the property mentioned in same shall be subjected, and directs that the lands ascertained to be liable shall be sold by designated commissioners, upon the terms prescribed, with instructions to the commissioners to report their proceedings to the court. But the decree does not direct the application of the proceeds of sales of the lands ordered to be sold. It will be necessary for the court at a later period to direct this application, pass on the reports of sales, and possibly approve or reject an upset bid, or bids. These duties will require the exercise of judicial discretion.

In the case of *Ryan's Adm'r* v. *McLeod*, 32 Gratt. (73 Va.) 376, Judge Staples, speaking of a decree like the one *supra*, says: "No title could be made to the purchaser without further action of the court; and what is most material to notice, no disposition is made of the purchase money; no direction given to the commissioner on the subject, so that the creditors could not receive a dollar of the proceeds, nor the heirs of the surplus, without a further decree. If this be a final decree, the court has deprived itself of all control over the subject matter of controversy, and ended the cause, without giving the parties the slightest relief. The very fact that no direction is given as to the proceeds of sale, and that the commissioners are required

to report their proceedings to court is conclusive that further action of the court was not only contemplated but actually necessary.   According to the uniform decisions of this court, a decree which disposes of the whole subject, gives all the relief that is contemplated, and leaves nothing to be done by the court, is only to be regarded as final.   On the other hand, every decree which leaves anything to be done by the court is interlocutory as between the parties remaining in the court."

See also the case of *Repass* v. *Moore,* 96 Va. pp. 147-150, 30 S. E. 458, 459, in which Judge Keith says: 'The decree under consideration does not decide the whole matter in contest and leave nothing for the court to do.   In order that lienors before the court might enjoy the fruits of litigation, it was necessary that there should have been a decree for the sale of the debtor's land, that sale reported and confirmed, and a distribution of its proceeds by subsequent decrees to those entitled.   The decree before us had not fully ascertained the liens, and the cause was remanded to a commissioner for further inquiry and report.   If the report of liens had been complete, and had been confirmed, and a decree for sale had been entered, it would not have been a final decree, for the action of the court upon the report of sale would still have been necessary."

To the same effect, see *Rawlings* v. *Rawlings,* 75 Va. 76; *Spoor* v. *Tilson,* 97 Va. 279, 33 S. E. 609; *Gills, by etc.* v. *Gills,* 126 Va. 526, 101 S. E. 900; 2 Barton's Chy. Pr. (1st ed.), sec. 233, p. 773.

[4] These authorities have never been shaken nor departed from, and afford ample authority for the conclusion reached by this court, that the decree in question, while it adjudicated the principles of the controversy, was an interlocutory and not a final decree.   This being so, the petition for appeal was presented in time, and the motion to dismiss the same is overruled.

The question, therefore, to be disposed of is, whether there is error in the decree of November 16, 1917, appearing on the face of the record.

"Until a final decree is entered and the court adjourned, all the proceedings from the first decree onward, though had or entered at former terms of the court, are interlocutory and in the breast of the court. Where, therefore, before final decree, any material error is discovered in any decree, the court on having its attention directed to the error, or the newly discovered evidence, is free to hear the parties, and to make such correction as justice demands. This is done by means of a petition to rehear."

[5] Being thus in the breast of the court, such decrees (*i. e.*, interlocutory decrees), do not constitute final records, and hence they are subject to alteration and amendment, in the sound discretion of the court, at any future term, and until the entry of the final decree. Hence, where considerations of justice require it, there is not the same judicial reluctance to grant relief under a petition to rehear, as in the case of a bill of review. Lile's Equity Pl. & Pr., secs. 148, 157.

[6] In the case in judgment, the trial court does not appear to have undertaken to determine whether the petition was a bill of review, or one to rehear, but sustained a demurrer to it whether considered as the one or the other. The petition, however, for the reasons given, *supra,* was one to rehear.

The petition does not state its case very clearly, or satisfactorily, but it sufficiently appears therefrom that the error imputed to the decree of November, 1917, is that it established judgments as binding liens upon the lands of the complainants which, upon the face of the commissioner's report, do not appear to have been docketed and indexed as required by the statute. The complainants allege that they had no notice, actual or constructive, of these judgments, and that

as a matter of fact, in many instances, the lands subjected by the decree complained of had been bought and paid for before the alleged judgments were rendered, though the deeds for these lands had not been recorded.

The statutes with respect to indexing and docketing judg-- ments are as follows:

"In such docket there shall be stated in separate columns the date and amount of the judgment; the names of all of the parties thereto; the alternate value of any specific property recovered by it, the date of docketing it, the amount and date of any credit thereon, the court in which, or the justice before whom it was rendered; and when paid off and discharged, in whole or in part, the time thereof, and by whom such payment or discharge was made where there is more than one defendant."   Code 1904, sec. 3560.

"No judgment shall be a lien on real estate as against a purchaser thereof for valuable consideration without notice, unless it be docketed according to the provisions of this chapter, in the county or corporation wherein such real estate is, either within twenty days next after the date of such judgment, or fifteen days before the conveyance of said estate to such purchaser."   Code 1887, sec. 3570.

"Every judgment shall, as soon as it is docketed, be indexed by the clerk in the name of each defendant, and shall not be regarded as docketed as to any defendant in whose name it is not so indexed."   Code 1904, sec. 3561.

"The clerk of every court shall have an index to each book he is required to keep, making convenient reference to every order, record, or entry therein.   Every execution and every judgment or decree for money shall be indexed, as well in the name of the person against whom as in the name of the person in whose favor the same is."   Code of 1904, sec. 3183.

[7] These sections require the docket to show the names of all of the parties to the judgment.   These names must be

set out, and the omission of the Christian name is fatal to the lien. See 17 Am. & Eng. Ency. L. (2d ed.), 775, and also *Ridgway's Appeal,* 15 Pa. 177, 53 Am. Dec. 586.

In the latter case a judgment was obtained against various parties by name, doing business under the partnership name of Mitchell, Green and Watson, but when the judgment was entered on the judgment lien docket, it was entered against Green, Watson and Mitchell, omitting the Christian names. The court said: "We think that the failure to add the Christian names is fatal to the claim. Though good as between the parties, it cannot affect subsequent purchasers." See also *Fulkerson* v. *Taylor,* 102 Va. 314, 46 S. E. 309.

[8] The sections cited also require that a docketed judgment shall be indexed in the name of each defendant, and shall not be regarded as docketed as to any defendant in whose name it is not so indexed. Looking to the commissioner's report, it will be seen that he reports the Ould judgments and the "other judgments" in very different fashion. The report of the Eaves judgment (and all of the "other judgments" are reported in like fashion) is as follows:

"Amos Eaves.
 "Principal of judgment .............$ 750
  Interest from December 10, 1892..... 1071
  Costs ......................... 175

 Amount due August 20, 1917.........$1996
Date December 10, 1892—docketed February 9, 1893."

The entries with respect to the Ould judgments are as follows:

"O. W. Ould.
Judgment vs. Moon and Harris (R. P. Harris being a

partner) rendered at the term of the Circuit Court for Pulaski county which began on July 25, 1892 (Law Order Book No. 4, p. 212).

"Principal of judgment ............$31418
Interest from May 10, 1890.......... 51420
Costs ......................... 2645

Amount due August 20, 1917........$85483

"Judgment vs. Moon, Hawley and Co.—R. P. Harris being a partner—rendered at same term of same court as above.

"Principal of judgment.............$56682
Interest on $12.82 from February
    11, 1891 ..................... 2040
On $100.00 from March 4, 1891..... 15876
On $102.00 from April 25, 1891.... 16157
On $102.50 from May 25, 1891...... 16186
On $249.50 from June 25, 1891...... 39150
Costs ......................... 1471

Amount due August 20, 1917....$1,47512

(N. B.—These two Ould judgments belong to R. L. Gardner.)"

[9] Commissioner Morton reports all of the judgments contained in his report as "subsisting liens against the estate of R. P. Harris," but judgments might be liens against the estate of R. P. Harris and not liens upon lands derived by purchase from R. P. Harris, without notice of such judgments. The statute prescribes the manner in which the owner of a judgment shall secure a lien against a purchaser of lands for valuable consideration without notice. A commissioner's report that reports a judgment as a subsisting lien against land held by such a purchaser, without showing, or even stating, that the judgment has ever been dock-

eted, reports a conclusion of law that a court should not be content to accept. For all that the court knows, and for all that the record shows, the Ould judgments were never docketed at all, much less docketed as prescribed by the statute. In the case in judgment, the commissioner states, in connection with the Eaves and other judgments, that they were docketed, giving in each case the date of such docketing; but with respect to the Ould judgments the report merely states that "they were rendered in the Circuit Court of Pulaski county during the term beginning July 25, 1892." This statement, in itself, would indicate that the judgments were never docketed, and the conclusion to that effect is aided by the very natural reflection that if these judgments had been duly docketed the commissioner would have made the same statement in his entries of said judgments that he had made touching the Eaves and other judgments included in his report. The manifest difference appearing in his statements with respect to the several judgments reported, without apparent reason therefor, suggests that there was a difference in the facts, and that a statement of docketing that could be properly made in respect of the Eaves and other judgments could not be properly made, and hence was not made with respect to the Ould judgments. Having his attention called to this state of the records by the allegations of the petition for rehearing, the trial court should not have dismissed this petition. He may have been justified in declining to consider the exhibits accompanying the petition, on the ground that in the exercise of due diligence they could have been procured at an earlier period; but the deficiencies of the report in the vital respect noted, and the error in the decree confirming that report, and subjecting the lands of the complainants to judgments that apparently were never docketed, and of which said complainants had no notice, the demurrer admitting the allegations of fact, were errors appearing on the face of the record.

87

[10] "These errors, in case of an interlocutory decree, can be corrected by a petition to rehear long after the errors have been committed. There is no prescribed time in which such a petition must be filed, though a complainant may be denied relief on the ground of laches." But in the case in judgment, the principle, or doctrine, of laches does not support the action of the trial court in dismissing the complainant's petition. In the view of this court, the petition should have been received, the demurrer overruled, and the questions raised by said petition considered on their merits. No order should be entered subjecting the lands of the complainants to the discharge of the Ould judgments until it satisfactorily appears in the record that such steps have been taken in connection with these judgments as to make them, under the Virginia statutes, subsisting liens upon these lands.

For the reasons given, the decree of the Circuit Court of Pulaski county, bearing date September 10, 1918, is reversed, and this case is remanded to said court for further proceedings therein conforming to the principles herein announced and conclusions reached.

*Reversed.*