COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Humphreys and Senior Judge Hodges
Argued at Chesapeake, Virginia


BENITA FRANCES BLACK

v.        Record No. 2022-02-1

WILLIAM V. POWERS, JR.

MEMORANDUM OPINION* BY
JUDGE ROBERT J. HUMPHREYS
NOVEMBER 4, 2003


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
James A. Cales, Jr., Judge

Samuel R. Brown, II (Samuel R. Brown, II, P.C., on briefs), for
appellant.

William V. Powers, Jr., *pro se* (Robert S. Ricks, on brief), for
appellee.


In this pending suit for divorce *a vinculo matrimonii,* Benita Frances Black appeals a

preliminary ruling of the chancellor that the parties' pre-nuptial agreement is governed by the law

of the Commonwealth of Virginia and is valid and enforceable under Virginia law.  Specifically,

Black contends the chancellor erred in finding that the pre-nuptial agreement is not governed by

the law of the United States Virgin Islands, and contends that under such law the agreement is

"unenforceable as unconscionable and demonstrably unfair."  In the alternative, Black contends

the chancellor erred in "finding that the pre-nuptial agreement [is] []enforceable" under Virginia

law.  Because we find that we are without jurisdiction to consider this interlocutory issue, we

dismiss this appeal.

I.  BACKGROUND

On August 22, 2001, Black filed a bill of complaint for divorce with the Circuit Court of

the City of Portsmouth, seeking a divorce from her husband, William V. Powers, Jr.  Black

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

alleged that the parties separated on June 4, 1994 and remained physically separated since that date, with the intent to "discontinue permanently the marital cohabitation." Thus, Black requested a divorce *a vinculo matrimonii*, as well as equitable distribution of the parties' marital property, pursuant to Code § 20-107.3.

Powers filed an answer and cross-bill on October 24, 2001, alleging that Black had committed "and continue[d] to commit adultery numerous times with numerous individuals" within the preceding five-year period. Powers stated that Black "willfully deserted the [marriage] to continue these affairs." Powers further alleged that the parties had entered into a pre-marital agreement (hereinafter "Agreement"), "as defined in Virginia Code 20-148 and recognized under section 20-149 and 20-154," prior to their marriage that, as a "matter of law define[d] their property rights and bar[red] the equitable side of the court from deciding those rights" pursuant to Code § 20-107.3. Thus, Powers requested that the court grant him an absolute divorce on the grounds of adultery and willful desertion and that the court sitting in equity defer to the court sitting in law and enforce the Agreement.

The Agreement, which was attached to Powers' answer and cross bill, provided as follows in relevant part:

> Whereas, a marriage is intended to be solemnized between the parties . . . and in anticipation thereof they desire to fix and determine the rights and claim that will accrue to each of them in the property and the estate of the other by reason of the marriage, and to accept the provisions of this agreement in full discharge and satisfaction of such rights.
>
> Whereas, each of the parties hereto has given a full and frank disclosure to the other the full amount of all property owned by each of the parties and each acknowledges that they are fully acquainted with the business and resources of each and each understands that the other is a person of possible substantial wealth. And each has answered all the questions each has about their income and assets and each understands that by entering into this agreement they may receive as the widow of each other substantially less than the amount they would otherwise be entitled

to receive if they died intestate or if they elected to take against their Last Will and Testament pursuant to statute and each has carefully weighed all the facts and circumstances, and desires to marry each other regardless of any financial arrangements made for their benefits and each is entering into this agreement freely and voluntarily, on competent independent legal advice and with full knowledge of their rights.

Now, therefore, In consideration of the promises and of the marriage and in further consideration of the mutual promises and undertakings hereinafter set forth the parties agree:

\* \* \* \* \* \* \*

3. Each party hereby waives, releases and relinquishes any and all claim and rights of every kind, nature or description that he or she may acquire by reason of the marriage in the other's property or estate under the present or future laws of the state of Virginia or any other jurisdiction.

\* \* \* \* \* \* \*

5. This agreement contains the entire understanding of the parties. There are no representations, warranties or promises other than those expressly set forth herein.

The Agreement was dated July 12, 1983, signed by both parties, and notarized.

On January 14, 2002, the chancellor held a hearing concerning the "validity" of the Agreement. Evidence presented during the proceeding established that the parties, both residents of Virginia, signed the Agreement on July 12, 1983 while vacationing on the island of Saint Croix, in the United States Virgin Islands. The parties were married in Saint Croix the next day.

At the close of the evidence, Black argued that the Agreement was invalid because it contained no "fair and reasonable provision" for Black, because there was no "full and frank disclosure" of Powers' worth before she signed the Agreement, and because she did not sign the Agreement "freely and voluntarily on competent, independent advice, with full knowledge of her rights."

- 3 -

The trial court stated as follows:

> I think your only hope is to find out that Saint Croix law or Virgin Island law or they had to apply the federal law down there on these cases, and I don't know the answer to that.

> \* \* \* \* \* \* \*

> Now, given the fact that [Powers and Black] had business dealings together, given the fact that it was clear at least for three or four months before they entered into this agreement there was going to be a prenupt. [sic] - there is some dispute about whether the actual prenupt. [sic] was handed over, but given all this – this was an arm's length contract that should stand on its face, absent – there is no evidence of fraud. There is no evidence of deceit.

The court further found no "fraud in the inducement," and stated, "I think the Saint Croix law is the law that should apply here, unless I can hear some argument to the contrary," and set the matter for further argument on the choice of law issue.

On March 28, 2002, after reviewing briefs filed by the parties addressing the choice of law issue, the trial court heard further argument on the matter. In addition to arguing the choice of law issue, Black informed the trial court that "[f]ederal law preempts [s]tate law under retirement plans, recent retirement plans. And prenuptial agreements cannot waive one's rights."[1] Relying on 29 U.S.C. § 1056, Black therefore requested discovery concerning any such items held by Powers. Powers' attorney agreed that Black should be entitled to any "URISA [sic] retirements," "those retirements that are not allowed to be addressed in the prenuptial." Accordingly, the trial court ordered Powers to provide Black with information concerning "[e]very retirement plan" in which he participated during the marriage.

Regarding the choice of law issue, the court found as follows:

---

[1] The validity of the legal basis for Black's argument in this regard was not addressed by the trial court and is not an issue on this appeal.

[G]iven this contract, I am going to rule that Virginia law applies, number one, and that, under Virginia law, it is valid. I will also state that, in my opinion, under Virgin Islands law, it is valid.[2]

It is this ruling that Black now appeals. The record reflects that no children were born of the marriage and that no decree of divorce has been entered.

## II. ANALYSIS

Prior to oral argument on this appeal, Powers filed a Motion to Dismiss Interlocutory Appeal. In his motion, Powers contends the appeal is interlocutory and should be dismissed, because the issue that is the subject of the appeal "does not adjudicate the principles of a cause as required by the provisions of Section 17.1-405(4)." We consider this motion before addressing the merits of the appeal.

"The Court of Appeals of Virginia is a court of limited jurisdiction. Unless a statute confers jurisdiction in this Court, we are without power to review an appeal." Canova Electric Contracting v. LMI Ins., 22 Va. App. 595, 599, 471 S.E.2d 827, 829 (1996) (citations omitted).

> This Court has appellate jurisdiction over final decrees of a circuit court in domestic relations matters arising under Titles 16.1 or 20, and any interlocutory decree or order involving the granting, dissolving, or denying of an injunction or "adjudicating the principles of a cause." Code § 17.1-405(3)(f) and (4), recodifying Code § 17-116.05(3)(f) and (4). A final decree is one "which disposes of the whole subject, gives all the relief that is contemplated, and leaves nothing to be done by the court." Erikson v. Erikson, 19 Va. App. 389, 390, 451 S.E.2d 711, 712 (1994) (internal quotation marks and citations omitted).

Wells v. Wells, 29 Va. App. 82, 85-86, 509 S.E.2d 549, 551 (1999).

The parties here agree that the trial court's order declaring the Agreement valid pursuant to Virginia law is a non-final, interlocutory order. Therefore, unless it constitutes an

---

[2] The trial court entered a written order to this effect on July 19, 2002. That order was signed by counsel for both parties, with objections noted by Black.

interlocutory order that "adjudicates the principles of the cause," we do not have jurisdiction to consider this appeal.

> For an interlocutory decree to adjudicate the principles of a cause, the decision must be such that "'the rules or methods by which the rights of the parties are to be finally worked out have been so far determined that it is only necessary to apply those rules or methods to the facts of the case in order to ascertain the relative rights of the parties, with regard to the subject matter of the suit.'" Pinkard v. Pinkard, 12 Va. App. 848, 851, 407 S.E.2d 339, 341 (1991) (quoting Lee v. Lee, 142 Va. 244, 252-53, 128 S.E. 524, 527 (1925)). An interlocutory order or decree that adjudicates the principles of a cause is one which must "determine the rights of the parties" and "would of necessity affect the final order in the case." Pinkard, 12 Va. App. at 851, 407 S.E.2d at 341. An interlocutory order that adjudicates the principles in a divorce case must "respond to the chief object of the suit which was to secure a divorce." Id. at [8]52, 407 S.E.2d at 341-42. "'[T]he mere possibility' that an interlocutory decree 'may affect the final decision in the trial does not necessitate an immediate appeal.'" Polumbo v. Polumbo, 13 Va. App. 306, 307, 411 S.E.2d 229, 229 (1991) (quoting Pinkard, 12 Va. App. at 853, 407 S.E.2d at 342).

Erikson, 19 Va. App. at 391, 451 S.E.2d at 712-13.

In Erikson, the trial court's ruling that the parties were validly married was found to be an unappealable interlocutory order. The court stated:

> Although the factual finding and legal holding that the parties are validly married is an essential element of the complainant's cause of action, that ruling is not a legal determination of "the principles" that are necessary to adjudicate the cause, and the ruling does not "respond to the chief object of the suit which was to secure a divorce."

Id. at 391, 451 S.E.2d at 713 (citations omitted). However, Erikson does not hold that, in any case in which a divorce is sought, there could be no appealable interlocutory order that did not grant the divorce. Indeed, such an interpretation would render meaningless the limited statutory grant of jurisdiction to this Court to hear certain interlocutory appeals. See Code § 17.1-405(4). Thus, we have recognized that there are potentially many "chief objects" in a suit for divorce. Those objects include determining the status of the parties' marriage, the distribution of the

- 6 -

parties' property, the custody of any children, and, if appropriate, awarding spousal and child support. Wells, 29 Va. App. at 86, 509 S.E.2d at 552 (divorce decree and custody determination); Nenninger v. Nenninger, 19 Va. App. 696, 697, 454 S.E.2d 45, 45 (1995) (divorce decree and equitable distribution).

In full accord with these principles, in Polumbo, we held that an order declaring *invalid* an antenuptial agreement denying the wife spousal support and a monetary award did not adjudicate the principles of the cause. Polumbo, 13 Va. App. at 308, 411 S.E.2d at 230. In Polumbo, the order did not dispose of any of the "chief objects" in the case, because it did not adjudicate the legal principles necessary to adjudicate the cause. See Erickson, 19 Va. App. at 391, 451 S.E.2d at 713.

In the case at bar, however, the chancellor declared the Agreement *valid* and, thus, a binding instrument necessarily affecting the parties' property rights in the matter. Nevertheless, although the chancellor's ruling, if unchanged, would undoubtedly affect the ultimate decision as to the distribution of the parties' separate property, the record reflects that no decree of divorce has been entered and that the Agreement, by concession of the parties, may or may not dispose of all the property acquired by the parties during the marriage. Specifically, the parties themselves agreed that distribution of certain retirement assets may not be governed by the Agreement.

Accordingly, the chancellor's ruling here did not necessarily establish the complete and final set of rules by which the property rights of the parties would be determined. Indeed, the record reflects that the ultimate matter of property distribution appears to be "still in the breast of the court and 'subject to alteration and amendment' by the judge before entering an appealable order." Weizenbaum v. Weizenbaum, 12 Va. App. 899, 903, 407 S.E.2d 37, 39 (1991) (holding that the legal principles determined in an interlocutory order substantially dictated the final order

- 7 -

in the case) (quoting <u>Richardson v. Gardner</u>, 128 Va. 676, 685, 105 S.E. 225, 228 (1920)).  Thus, we hold that the order here is interlocutory and does not sufficiently adjudicate the principles of the cause.  Therefore, we find that we are without jurisdiction to entertain the merits of the appeal.

<u>Dismissed.</u>