# Richmond.

G. Gibson Worsham, et al. v. Adele Desmarius Nadon.

March 19, 1931.

Present, Prentis, C. J., and Campbell, Holt, Epes and Hudgins, JJ.

The opinion states the case.

*Sands, Williams & Lightfoot,* for the appellants.

*Willis D. Miller* and *James W. Gordon,* for the appellee.

CAMPBELL, J., delivered the opinion of the court.

J. F. Nadon, and his wife, Kate Schifferly Nadon, formerly a resident of Illinois, came to Virginia in 1919, and in 1921 Nadon purchased valuable real estate in Richmond. After the purchase of this property he and his wife resided on it until

his death in April, 1923. Nadon, by his will, which was duly probated, devised all of his property to his wife, except certain nominal bequests which he made to his children by a former marriage, and she was named executrix and qualified as such. In the fall of 1923 she remarried and her present husband's name is T. J. Jackman, who is named as a party to the suit, which will later be referred to.

In 1924 the appellant, G. Gibson Worsham, exchanged properties with Mrs. Jackman (formerly Mrs. Nadon), he taking the property which Nadon had formerly owned and which he had devised to her and she taking certain other properties which were owned by Worsham. The deed to Worsham bears date of February 18, 1924, and the property of Mrs. Nadon was valued at more than $60,000.00. There were sundry liens on the property which were assumed by Worsham and he took possession after the transaction was closed in the early spring of 1924.

In February, 1925, a suit was instituted by Adele Desmarius Nadon against Worsham, et als., and the bill was filed on the 7th day of April, 1925. Process was executed on the defendants on February 11, 1925.

In the bill the complainant, who is the appellee here, alleges that at the time of the death of Nadon she was his lawful wife; that he died seized of the real estate in question; that the liens on the property were valid liens and that she is entitled to dower in the property after the liens have been paid off. She prays that dower be assigned her.

When Worsham was advised of the suit he immediately notified his attorney, Mr. Howell, who interviewed Mrs. Jackman, and learned from her that Nadon had had a former wife from whom he had been divorced before he married the present Mrs. Jackman. Mr. Howell obtained a certified copy of the divorce decree and a certified copy of the marriage license which had been granted to Nadon and Mrs. Jackman, and promptly carried these two papers to the appellee's attorney,

Mr. Miller. Mr. Miller informed his client, who resides in Minnesota, of the divorce and the second marriage of Nadon. Mr. Howell's conversation with Mr. Miller took place in April, 1925, and Mr. Miller did not inform Mr. Howell of the result of his correspondence with his client until January, 1927. In the meantime Mr. Miller, after he had learned of the divorce through the appellants' counsel, proceeded through associate counsel in Minnesota to annul the divorce which Nadon had secured in Cook county, Illinois. Mrs. Jackman, executrix (formerly Mrs. Nadon), was the sole defendant to that proceeding and she was proceeded against by an order of publication. No notice or other information was given the appellants or their counsel by Mr. Miller of the institution of the Illinois suit, until after a final decree had been entered therein annulling the divorce. The appellants were not named as parties to that suit, though they were the real parties in interest who would be affected by the result.

After the Illinois court had set aside the divorce decree and had adjudicated that the appellee was the wife of Nadon when he died, then Mr. Miller renewed his efforts in the prosecution of the present suit, which, however, had not been dismissed, but which had remained dormant on the docket for nearly two years. The first notice of any kind given by Mr. Miller to the appellants or their counsel of the Illinois proceeding was on January 4, 1927, when he informed them that the divorce of Mr. Nadon had been invalidated and that his client, the appellee, was the lawful wife of Nadon when he died.

The appellants' counsel believing that the present suit had been abandoned, deemed it unnecessary to file an answer to the bill of complaint, but after they learned on January 4, 1927, that Mr. Miller was going to proceed to prosecute the suit, and that the divorce had been annulled, they, some time afterwards, tendered their answers, but the appellee's counsel objected on the ground that more than six months had expired since the process was executed; therefore, under section 6122

of the Code, it was too late to answer the bill and on this ground the trial court sustained the objection and refused to permit the appellants to answer.

It is to this ruling of the trial court that the appellants assign error.

By deed bearing date of July 28, 1925, Worsham conveyed the property to Julien Gunn and he in turn conveyed it to Paul Smith in December, 1926. Paul Smith died and his widow now resides upon the property. These parties were later made parties to the suit.

The suit was instituted in the Circuit Court of Henrico county, but by an order the judge of that court certified that it was, in his opinion, improper for him to consider and decide the issues involved; so the cause was transferred to the Chancery Court of the city of Richmond. This order was entered on the 21st day of November, 1928. The final decree complained of was entered on May 17, 1929, by the Chancery Court of Richmond, denying the defendants the right to file their answers.

The other defendants did not apply for an appeal; therefore the decree here in question is final as to all of the other defendants.

On January 8, 1929, the appellants moved the court to be allowed to file their answers and other defenses in the cause and the appellee objected. The court requested that the parties file affidavits in support of their respective positions. Later the appellants tendered their plea and answer and filed affidavits in support of their motion. The appellee filed affidavits in opposition to the granting of the motion and the court heard the matter on the pleadings, pleadings tendered and upon the affidavits. The court held "that none of the said defendants have shown good * * * cause for permission to file their answers or other defenses, the court doth overrule all of said motions and doth refuse to allow either or any of said answers or other defenses to be filed, * * * whereupon the said

G. Gibson Worsham and Julia P. Worsham * * * presented and tendered * * * an answer and cross-bill which they asked leave to then file * * * the court doth refuse to allow such answer and cross-bill to be filed * * *."

The decision of the question presented necessarily involves the construction of section 6122 of the Code, prior to the amendment of 1930 (Laws 1930, c. 237). That section was as follows:

"A defendant in equity upon whom process has been executed shall file his answer or other defense in the court or in the clerk's office of the court in which the suit or proceeding is pending within six months from the date of such service, unless after notice to the adverse party, and for good cause shown, the time be lessened by the court or additional time be given by the court, or the judge thereof in vacation, within which to file the same. After the lapse of such six months, or additional time, if any such be granted, no answer or other defense shall be received except for good cause shown and upon payment to the complainant of his costs up to that time, or such part thereof as the court or judge shall deem reasonable, and unless the defendant will undertake to file his answer within such time as the court or judge shall direct, and submit to such other terms as the court or judge shall direct, for the purpose of speeding the cause."

From the affidavits of Mr. Howell, Mr. Miller and Mr. Davis, we are satisfied that the appellants had good cause for failing to file their answers and other defenses within six months from the time process was served upon them.

From these affidavits showing what was said at the interviews of the attorneys it is clear that the appellants' attorney believed that the suit would be abandoned or allowed to remain dormant upon the docket, and from the delays of the appellee in failing to prosecute the suit for nearly two years it seems that the appellants' attorney was thoroughly justified in his belief.

Mr. Miller's statement of his interview with Mr. Howell, taken from his affidavit, is as follows:

"I declined to dismiss this suit on the basis of this alleged decree, but stated that if it was *bona fide* and a valid proceeding such a divorce would appear to end this matter, but also stated that I was going to investigate its validity and the mode in which it had been secured, as my client, Mrs. Nadon, knew nothing of it. I notified my corresponding attorney in Minneapolis, Minnesota, concerning the same * * *."

Mr. Howell, who was at the time looking after the interest of the appellants, stated: "I called on Mr. Willis D. Miller and showed him the decree of divorce and the record of marriage and while he did not say positively that he would dismiss the suit I inferred from the conversation with him that he was perfectly satisfied that the claims of his client * * * were groundless and I inferred from what he said that the suit would be dismissed. * * *."

Mr. Davis, another attorney, stated that he had had an interview with Mr. Miller and that Mr. Miller stated "that he was merely local counsel and that he had been unable to get other counsel in the case to go on with the suit. He did not state to affiant that the suit would be dismissed but affiant received the impression * * * that the suit in all probability would be abandoned * * * no mention was made of the suit in Chicago * * * and affiant did not know that there was such a suit * * * until * * * the early part of January, 1927."

The interview of Mr. Howell with Mr. Miller, the appellee's counsel, was within six months from the time process had been served on the appellants. The exact date of this interview is not shown but it appears to have taken place within three months after the process had been served. The date of the interview of Mr. Davis with Mr. Miller is fixed as December, 1926, one year and ten months after the suit had been instituted.

It appears beyond question that from February 11, 1925, the time process was served on the appellants, until January 4, 1927, after the divorce decree had been annulled in Illinois, no proceedings were had in the cause. The lapse of nearly two years, considered along with the interview had with Mr. Miller and from Mr. Miller's own statement, convinces us that the appellants had a valid excuse and good cause, as a matter of law, for not filing their answers within the six months' period.

The intent and purpose of the General Assembly in enacting section 6122 of the Code was to prevent delays which might occur by reason of dilatory tactics. With a view of expediting and ending litigation, a penalty was imposed upon a defendant who has failed or refused to file his answer within six months after he has been served with process, unless he has a valid excuse or good cause for not doing so. But if a defendant has good cause for not filing his answer within the six months' period he does not come within the provisions of that portion of the statute which imposes the penalty. Giving the statute a reasonable construction, as we must do, the appellants having shown good cause for not filing their answer within the six months, the penalty does not apply to them because they have not violated the statute.

The appellee had her right, when she desired to renew the prosecution of the suit in January, 1927, to ask the court to require the appellants to file their answers. If the court had entered such an order, and they had refused to comply with it, then it would not have been necessary to invoke section 6122 of the Code, for the violation of the court's order would have, in itself, been punishable.

The penalty prescribed by the statute under the plain and unambiguous language used, applies only to the defendant upon whom process has been served and who has failed for six months to file his answer without good cause. It prescribes no penalty for any other defendant. Therefore, the defendant who has failed to file his answer within the six months and who

has good cause for such failure, is not liable to any penalty because the statute does not apply to him. If a defendant has good cause for his failure to file his answer within the original six months' period, then subsequent delays are not punishable because the statute does not embrace subsequent delays.

The appellee has not used due diligence in prosecuting this suit. As Mr. Justice Epes, speaking for this court in the recent case of *Tucker* v. *Foster,* 154 Va. 182, 152 S. E. 376, 381, 69 A. L. R. 220, said:

"The purpose of section 6122, Code Va. 1919, prescribing the time within which a defendant may and shall file his answer or other defense, is not to cut off the orderly presentation of defenses, or to set a trap for the unwary defendant by which a plaintiff may by delaying the prosecution of his cause cut off the defendant from a full defense or escape the necessity for proving his case. Its purpose is to prevent unconscionable delay in the orderly procedure in a chancery cause being caused by dilatory tactics on the part of the defendant or by the neglect of the defendant, where the plaintiff has shown due diligence on his part in the prosecution of the cause."

What was said in that case strikingly applies to the case before us. We are of opinion that the decree complained of should be reversed and the cause remanded.

*Reversed and remanded.*