# Richmond

GEORGE M. MANN v. VIRGINIA B. CLOWSER AND
JOHN A. CLOWSER.

May 1, 1950.

Record No. 3625.

Present, Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

The opinion states the case.

*A. Garland Williams* and *J. Edward Thoma*, for the appellant.

*Wilbur F. Trout* and *Frank S. Tavenner, Jr.*, for the appellees.

EGGLESTON, J., delivered the opinion of the court.

In the summer of 1947 L. N. Ritter, an architect, prepared for Virginia B. Clowser and John A. Clowser, her husband, plans and specifications for the construction of a building on a lot owned by Mrs. Clowser in Clarke county. The blueprints showed that the first floor of the building was to be used as a restaurant and dance hall with living quarters over the restaurant.

After obtaining from several other contractors estimates for the construction of the building, at prices ranging from $16,000 to $29,000, the Clowsers interviewed the appellant, George M. Mann, a local contractor, about the middle of July, 1947, with respect to undertaking the work. Upon studying the plans and specifications Mann entered into a verbal contract with the Clowsers to construct the building.

The testimony of the respective parties is in conflict as to the terms of this contract. The Clowsers say that Mann advised them that the building could be constructed according to the blueprints, but without reference to the detailed specifications, at a cost ranging from $10,000 to $11,000, and

that it probably could be constructed at a lesser figure if "cheaper" materials were used. They further say that Mann made them a "firm offer" to construct the building on these terms, that they accepted it, and that the work was undertaken on this basis.

Mann, on the other hand, testified that he agreed with the Clowsers to construct the building on a "cost plus basis"— that is, he was to furnish the labor and materials and was to receive as his compensation 10% of the cost thereof.

The work was started in August, 1947, and was substantially completed about the middle of the following April. In the meantime the Clowsers made several payments to Mann as the work progressed, the last of these being in January, 1948.

On May 4, 1948, Mann filed a mechanic's lien on the building and the tract of land on which it was located to secure the sum of $9,613.39, which he claimed was the balance due him on the contract. On July 3, Mann, in order to enforce his claim, filed a petition in an equity suit which had been instituted for the purpose of enforcing another mechanic's lien on the property.

Although process was issued on both the original bill and Mann's intervening petition, and was served on the Clowsers, they made no appearance and filed no answer in the cause. On August 9, 1948, a *pro confesso* decree was entered, in which among other things it was ordered and decreed that Mann recover of Virginia B. Clowser, in whose name the title to the real estate stood, the sum of $9,613.39, with interest from May 1, 1948. By the terms of the same decree the cause was referred to a master commissioner who was directed to ascertain and report the liens and the order of their priority on the land and building.

Shortly thereafter the master commissioner filed his report, to which no exceptions were taken, and on September 21, 1948, a decree was entered confirming this report and ordering the property to be sold to satisfy the liens thereon.

On October 12, 1948, the Clowsers, by leave of court,

filed their petition in the cause, alleging that since the entry of the decrees of August 9 and September 21 they had discovered that there were serious defects in the construction of the building, due both to poor workmanship and the use of improper materials, and that such defects could not have been discovered by the exercise of due diligence prior to the entry of the decrees. They prayed that the decrees be reheard and annulled, and that they be permitted to offset against any sum due by them to Mann their provable damages occasioned by his faulty construction work. There was a further prayer that a sale of the property be postponed.

The petition for a rehearing was supported by affidavits of the architect who had prepared the plans, one of a contractor, and those of the Clowsers.

In accordance with the prayer of the petition the sale of the property was postponed pending the outcome of the controversy which had thus arisen. The petition was later amended and supported by a bill of particulars.

Mann moved to strike this petition on the grounds, among others, that the decree of August 9, 1948, by the terms of which he had been given a judgment against Mrs. Clowser for $9,613.39, with interest, was a final decree and not subject to be reviewed or reheard; that the petition of the Clowsers was in effect an answer to his petition and was filed too late; and that, in any event, the allegations in the petition did not measure up to the requirements for a rehearing on the ground of after-discovered evidence.

While Mann answered, denying the allegations of the Clowsers' petition, he filed no supporting affidavits controverting their right to a rehearing.

On May 6, 1949, the lower court entered a decree holding that the decrees of August 9 and September 21, 1948, were not final but interlocutory and were subject to review; that except as to the judgment of $9,613.39 which had been decreed in favor of Mann against Mrs. Clowser, the amended petition of the Clowsers and the affidavits filed therewith disclosed that they had "a valid defense" to Mann's claim

which was "new and could not have been discovered by the exercise of due diligence prior to August 9, 1948;" and that such defense was "material" and if interposed might have produced a different result in the former hearing of the cause. Accordingly, except as to the personal judgment, the decrees were set aside.

It was further decreed that because of the obvious conflict in the evidence an issue out of chancery should be and was directed to be made up and tried to ascertain (1) whether there was a breach of contract by the contractor, Mann, and (2) if so, the amount of damages, if any, sustained by the Clowsers as the result thereof.

In accordance with this decree a jury was impaneled and upon the evidence adduced they brought in a verdict, deciding on the first issue that Mann was "guilty of breach of contract," and on the second that the Clowsers were entitled to recover of him damages in the sum of $7,500. The verdict specified that $5,000 damages had resulted "from improperly constructed footings" in the foundation, and $2,500 in damages for "deviation from the contract as to the materials used."

Mann's motion to set aside the verdict was overruled and a decree was entered directing that the Clowsers recover of him $7,500, with interest from May 13, 1949, that being the date of the verdict, and that this sum "be set off against the said judgment of $9,613.39, with interest," which previously had been entered in favor of Mann against Virginia B. Clowser. From that decree the present appeal has been taken.

The petition filed on behalf of the Clowsers was not, as Mann contends, a bill of review. It was a petition for a rehearing and was so treated and considered by the court in the decree granting the rehearing.

These two types of pleadings are thus clearly distinguished in Lile's Equity Pleading and Practice, 2d Ed., pp. 97, 98:

"Sec. 195. *Petition to rehear.* The purpose of a petition to rehear is much the same as that of the bill of review—

namely, to have the trial court rehear the cause in the particulars set out by the party complaining of error, and to correct the errors alleged.

"Sec. 196. *The same—contrasted with bill of review.* While the purpose of these two pleadings is substantially similar, there is wide variance in the scope of the two and in the circumstances under which they may be filed respectively.

"We have just seen that the bill of review lies only after a final decree, and only for the correction of errors of law apparent on the face of the record, or to introduce newly discovered and material evidence, and must be filed within one year from the date of the final decree.

"On the other hand, a petition to rehear is the appropriate method of bringing errors to the attention of the trial court (1) *before* final decree; (2) whether the errors be of *law or of fact*; or (3) for the introduction of *newly discovered evidence*; nor, in Virginia, (4) is there any *statutory limitation* applicable to such petitions.

\* \* \* \* \* \* \*

"Sec. 197. *The same—Interlocutory decrees in the breast of the court.*

"Being \* \* \* in the breast of the court, such decrees do not constitute final records; and hence they are subject to alteration and amendment, in the sound discretion of the court, at any future term and until adjournment after entry of the final decree. Hence, where considerations of justice require it, there is not the same reason for judicial reluctance to grant relief under a petition to rehear as in the case of the bill of review."

See also, *Royall* v. *Peters*, 180 Va. 178, 187, 21 S. E. (2d) 782, 786, and cases there cited.

Clearly, we think, the trial court was right in holding that the decrees of August 9 and September 21, 1948, were interlocutory and not final decrees.

Mr. Minor's frequently quoted definition of a final decree is one "which *disposes of the whole subject,* gives all the

relief that was contemplated, provides with reasonable completeness for giving effect to the sentence, and leaves nothing to be done in the cause, save to superintend ministerially the execution of the decree." 4 Minor's Institutes, 1878 Ed., p. 860. See also, *Richardson* v. *Gardner*, 128 Va. 676, 682, 105 S. E. 225.

The following criterion of an interlocutory decree, laid down by Judge Baldwin in *Cocke* v. *Gilpin*, 1 Rob. (40 Va.) 20 [22, 30], has been approved in many cases: "Where the further action of the court in the cause is necessary to give completely the relief contemplated by the court, there the decree upon which the question arises is to be regarded not as final, but interlocutory." See also, Lile's Equity Pleading and Practice, 2d Ed., sec. 188, p. 95; *Ryan* v. *McLeod*, 32 Gratt. (73 Va.) 367, 376-381; *Ashworth* v. *Hagan Estates*, 165 Va. 151, 164, 181 S. E. 381, 386.

*Spilman, etc., Co.* v. *Gilpin*, 93 Va. 698, 25 S. E. 1004, involved a situation almost identical with that with which we are now concerned. In that case Gilpin instituted an equity suit to enforce the lien of a deed of trust to secure the payment of unpaid purchase-money notes which Spilman, Adams & Company had given for the purchase of certain lots. The defendants failed to answer in the required time and at the January, 1894, term a decree was entered taking the bill for confessed and entering judgment in favor of the plaintiff against the defendants for the balance due with interest. The decree further provided that unless this sum and the costs of the suit be paid within thirty days, a commissioner should sell the property. The money was not paid, the lots were exposed for sale and brought a grossly inadequate sum.

At the April, 1894, term a report of the sale was made. At the same term Spilman, Adams & Company, the defendants, filed a petition for a rehearing, with accompanying affidavits, asking that the decree entered at the previous January term be reheard and annulled. This petition alleged a state of facts which, as the opinion says, if presented at

the proper time and in the proper manner constituted a complete defense to the suit. The lower court refused to rehear the decree, dismissed the petition, and confirmed the report of sale. On appeal this court reversed the decree and held that the defendants were entitled to a rehearing upon the petition.

Of the character of the decree sought to be reviewed this was said:

"The decree of January, 1894, was not a final, but an interlocutory decree. The plaintiff came into court asking the enforcement of a specific lien. In order to afford complete relief in such cases, a court of chancery, having taken jurisdiction over the subject, not only enforces the lien, but to make an end to litigation gives a personal decree for the debt. The source of equity jurisdiction, however, is not the right to a personal decree, but the right to the enforcement of the lien. A decree is final which disposes of all questions presented for decision in a cause, and gives all the relief to which, under the pleadings and the proof, the parties are entitled. (Citing cases.)

"In this case not only does the decree of January 20, 1894, fail to give all the relief to which the plaintiff was entitled, but it did not give that relief, the prayer for which alone gave the plaintiff a standing in a court of equity. * * *" (93 Va., at page 702.)

And so in the present case, the source of equity jurisdiction was not the right of Mann to a personal decree against the Clowsers, but the right to enforce the mechanic's lien against their property. Code 1950, sec. 43-22. The decree of August 9, 1948, ascertained the amount of the debt due the contractor and referred the matter to a master commissioner to ascertain the liens and their priorities. The decree of September 21, 1948, confirmed the commissioner's report and directed a sale of the property. But the complete relief sought by the lien creditor, Mann, could not be accomplished until the property had been sold, the sale confirmed and the proceeds distributed. Thus a further decree was necessary

for the accomplishment of the purposes of the suit, and this required judicial as distinguished from ministerial action by the court.

· The appellant, Mann, argues that the petition for a re-hearing should have been denied because, he says, it was in effect an answer asserting a defense to the Mann petition and was not filed within the ninety days required by Code of 1950, sec. 8-121.

We need not stop to consider whether this section applies to the present situation and operates to place a limit on the time within which a petition for a rehearing may be filed. Assuming, but not deciding, that the section is applicable, it does not necessarily preclude the filing and enter-taining by the court of a petition to rehear. We have frequently pointed out that this section does not absolutely preclude a defendant from filing an answer after the expira-tion of the specified time limit, but merely imposes upon him the burden of showing that his failure to file within the required time was due to a good cause. *Carpenter* v. *Ingram*, 152 Va. 27, 35, 146 S. E. 193; *Worsham* v. *Nadon*, 156 Va. 438, 445, 157 S. E. 560. Whether an answer should be received under the particular circumstances is within the sound judicial discretion of the trial court. *Stiers* v. *Hall*, 170 Va. 569, 573, 197 S. E. 450, 452. The same is true if the petition to rehear be treated as an answer.

In the case before us the allegations in the petition for a rehearing and the statements in the supporting affidavits disclose that there were serious defects in the building, due both to faulty workmanship and the use of improper materials, which, if true, entitled the owners to recover substantial damages of the contractor. It likewise appears from the petition and supporting affidavits that these defects were not discovered, and by the exercise of due diligence could not have been discovered, by the Clowsers until early in October, 1948. While some minor defects had become apparent earlier, it was not until after the Clowsers had employed counsel on September 29, 1948, and under his

direction a careful examination of the building by qualified experts had been made, that the serious defects were discovered. It is obvious that if these allegations were true the defense was material and if seasonably interposed might have produced a different result in the former hearing.

We are of opinion that under the circumstances the trial court acted within its sound judicial discretion in reopening the decrees of August 9 and September 21, 1948, upon the petition for a rehearing.

Over the objection of the Clowsers the trial court refused to set aside so much of the decree of August 9, 1948, as rendered personal judgment against Mrs. Clowser in favor of Mann in the sum of $9,613.39. This action was not based, as counsel for Mann suggests, upon the theory that this portion of the decree was final. It was based upon the finding that the petition to rehear did not satisfy the requirements of after-discovered evidence with respect to the balance due the contractor. At any rate, since there is no cross-assignment of error to this action of the court, it is not necessary that we discuss whether the personal judgment should have been set aside.

The question to be determined by the jury was what amount, if any, the Clowsers were entitled to recover of Mann, by way of offset to the judgment entered in his favor, for his alleged faulty construction of the building.

The architect who prepared the plans did not supervise the work, and that there were serious structural defects in the building was hardly in dispute. Certainly it was proven by the overwhelming weight of the evidence. Both sides agree that some of these faults were due to departures from the architect's plans. Mann contends that the Clowsers, in their desire to lessen the cost of the building, agreed to all of these changes. The Clowsers, on the other hand, say that while they agreed to slight changes in the plans, they did not consent to and had no knowledge of drastic structural changes which brought about the trouble. Moreover, they

say, other defects were occasioned by faulty workmanship on the part of the contractor.

In view of the fact that there must be a new trial it is unnecessary that we detail the evidence as to the defects in the building and the damages resulting therefrom. Suffice it to say, that upon conflicting evidence it was peculiarly within the province of the jury to determine under proper instructions whether the contractor had performed or breached the contract which he had made with the owners for the construction of the building. Specifically, it was for the jury to say what defects, if any, were due to the changes in the plans and which of such changes, if any, the owners had agreed to.

It was within the province of the jury to determine what defects, if any, were occasioned by faulty workmanship on the part of the contractor.

Likewise, it was for the jury to determine what damages the owners had suffered by reason of the contractor's breach, if any, of the contract.

In his assignments of error Mann, the contractor, claims that the court improperly instructed the jury both as to his duties and obligations to the owners and as to the measure of the damages, if any, assessable against him.

The court instructed the jury "that in every contract for the performance of service the law presumes that the work shall be done in a workmanlike manner and in accordance with good usage and accepted practices in the community in which the work is done," and that if they believed from the evidence that the contractor "failed to perform any item of work in a workmanlike manner and in accordance with good usage and accepted practices in building construction of a similar character in the community in which the work was done," they should find for the Clowsers.

Mann attacks this instruction on the ground that there was no evidence of any such undertaking on his part. There is no merit in this contention.

As is said in 17 C. J. S., Contracts, sec. 329, p. 781, "Ordinarily a person undertaking a particular work impliedly agrees to exercise a degree of skill equal to the undertaking, * * *. So, in case a person holds himself out as specially qualified to perform work of a particular character, there is an implied warranty that the work which he undertakes shall be of proper workmanship and reasonable fitness for its intended use, * * * ."

Consequently, "In building and construction contracts it is implied that the building shall be erected in a reasonably good and workmanlike manner and when completed shall be reasonably fit for the intended purpose." 17 C. J. S., Contracts, sec. 329, p. 781, note 53, and cases there cited. See also, *Economy Fuse, etc., Co.* v. *Raymond Concrete Pile Co.,* C. C. A. 7, 111 F. (2d) 875, 879; *Rehr* v. *West,* 333 Ill. App. 160, 76 N. E. (2d) 808.

The instruction merely interprets the phrase "workmanlike manner" as being "in accordance with good usage and accepted practices in the community in which the work is done." This is apparent both from the language of the instruction and from the ruling of the trial court in admitting evidence on behalf of the Clowsers that the work had not been done in a "workmanlike manner." In explanation of that phrase a witness testified that the building had not been constructed "in accordance with the requirements of good usage and accepted principles in building construction in this community."

Mann lived and plied his trade in the community and is, of course, presumed to be familiar with the requirements of good usage and accepted practices in his profession and in that locality.

Error is assigned to the action of the court in giving Instruction No. 10 which reads thus:

"The court instructs the jury that if they believe from a preponderance of the evidence that the use of lighter materials was suggested by George M. Mann and that the probable result would be the collapse of any portion of the

building, then it was his duty to warn Mr. and Mrs. Clowser of such danger. This would be true regardless of whether George M. Mann actually knew of such probable result in the use of such materials, because he is charged with such knowledge by virtue of the nature of his undertaking under the contract, and even though the jury might believe that Mr. and Mrs. Clowser consented to the use of the lighter materials, they would be entitled to recover damages proximately resulting from the use of such lighter materials, in the event that George M. Mann did not fully inform them of such danger."

This instruction relates to the use by the contractor of lighter joists, rafter beams and cinder blocks than those specified in the plans. It told the jury that if the use of such lighter materials would probably result in the "collapse of any portion of the building," Mann was "by virtue of the nature of his undertaking under the contract," chargeable with knowledge of such danger and was under the legal duty to so notify the Clowsers, and that if he failed to do so he was liable to them although they may have agreed to the change.

In effect, this instruction made the builder the insurer or guarantor of the consequences of the departure from the plans, regardless of whether he possessed any engineering knowledge or skill on the subject, or knew or should have known of such consequences, or whether he held himself out or represented to the owners that he had such qualifications or knowledge.

In our opinion this was an erroneous statement of the contractor's obligation and liability to the owners. A contractor or builder does not impliedly warrant that he has the engineering skill or knowledge of an architect, and ordinarily he is not liable for the consequences arising from changes made, with the full knowledge and consent of the owner, in the plans and specifications prepared by an architect. 17 C. J. S., Contracts, sec. 515-f, p. 1110.

But the consequences of the change may be so obvious or

well known to his trade that the contractor or builder, from his experience or the nature of his undertaking, should know of them, in which event it is his duty to make a full and fair disclosure thereof to the owner.

Consequently, the instruction should have told the jury that before making the change the contractor should have obtained the owners' consent thereto, after having fully and fairly advised them of the probable consequences which he knew, or should have known from his experience or the nature of the undertaking, would result from the change.

As given, the instruction was in conflict with Instructions Nos. 9 and 11 which predicated the contractor's liability, on this phase of the case, upon a finding that he had "knowledge" of the probable consequences of such changes.

The final assignment of error is that the lower court, both in its rulings on the admissibility of evidence and in the instructions to the jury, adopted an improper view of the measure of damages, if any, which the Clowsers were entitled to recover of the contractor for a breach of the contract. The lower court took the view that the owners' damages should be measured by the "cost rule"—that is, the cost of correcting the defects in the building and making it conform to the terms of the contract. The contractor claims that the damages should have been measured by the "value rule"—that is, the difference between the value of the building properly completed according to the contract and the value of the defective structure.

This court has not previously had occasion to discuss the subject fully. *Lambert* v. *Jenkins*, 112 Va. 376, 71 S. E. 718, Ann. Cas. 1913B, 778, involved the measure of damages for the defective construction of a granolithic floor. We held that the owner was entitled to recover such amount "as it would reasonably take to make the granolithic floor conform to the contract." (112 Va., at page 381.)

In *Scott* v. *Chesterman*, 117 Va. 584, 85 S. E. 502, where the question was only incidentally presented, it was said that "the rule as to the measure of damages for the defective

work in such a case is the difference between the value of the houses built according to the contract—the contract price—and the value of the houses as actually completed." (117 Va., at page 608.) In that case the defects complained of were not particularized and beyond the cited quotation the subject is not discussed.

The authorities agree that the rule to be followed in a particular case depends upon the character and extent of the defective construction. It is thus stated in Williston on Contracts, Rev. Ed., Vol. 5, sec. 1363, pp. 3825-6:

"Where the contractor fails to keep his agreement, the measure of the employer's damages, whether sought in an independent action or by recoupment or counterclaim, is always the sum which will put him in as good a position as if the contract had been performed. If the defect is remediable from a practical standpoint, recovery generally will be based on the market price of completing or correcting the performance, and this will generally be shown by the cost of getting (the) work done or completed by another person. If the defect is not thus remediable, damages are based on the difference between the value of the defective structure and that of the structure if properly completed. * * *"

■ Restatement of the Law of Contracts, sec. 346, p. 573, expresses it in this manner:

"(a) For defective or unfinished construction he (the owner) can get judgment for either

"(i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or

"(ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste."

In *Jacob* v. *Kent*, 230 N. Y. 239, 656, 129 N. E. 889, 130 N. E. 933, 23 A. L. R. 1429, Judge Cardozo succinctly states the rule thus: "The owner is entitled to the money

which will permit him to complete, unless the cost of completion is grossly and unfairly out of proportion to the good to be attained. When that is true, the measure is the difference in value."

See also, 9 Am. Jur., Building and Construction Contracts, sec. 152, p. 89; *Idem*, 1949 Supp., sec. 152, pp. 25, 26.

It is clear from these statements of the governing principles, which we approve, that the determination of which rule shall be applied will depend upon the facts and circumstances of the particular case. In the case before us while the defects are substantial and the estimated cost of correcting them is considerable, we think the lower court was correct in measuring the owners' damages by the "cost rule" rather than by the "value rule."

The evidence on behalf of the Clowsers is that corrective measures were absolutely necessary to make the building sufficient for the purposes for which it was constructed. The situation is not one where the owners may content themselves with the use of property of lesser value than that contracted for.

According to the evidence on behalf of the Clowsers, the defects are remediable from a practical standpoint and the costs are not grossly disproportionate to the results to be obtained. The contractor produced no evidence to the contrary.

Should the evidence at the new trial be materially different the rulings of the lower court should be modified accordingly and within the principles stated.

The other assignments of error deal with matters which are not likely to arise on a new trial and hence it is unnecessary that they be discussed.

Because of the error in Instruction No. 10, and other related instructions, the verdict of the jury is set aside, the decree of June 18, 1949, is reversed, and the cause is remanded for further proceedings in conformity with this opinion.

*Reversed and remanded.*