## CIRCUIT COURT OF CAMPBELL COUNTY

Franklin Mobile Home
Sales & Service, Inc.

v.

Donna Kay Martin

July 25, 1996

Case No. CL 95000378-00

BY JUDGE J. MICHAEL GAMBLE

I am writing this letter to render my judgment in this case. The trial of this case was held on July 18, 1996. I took the case under advisement in order to review the exhibits and the legal authorities. For the reasons I have set forth more fully below, I find that the plaintiff, Franklin Mobile Home Sales & Service, Inc. ("Franklin") materially breached its contract with Donna Kay Martin and cannot recover. I grant to Donna Kay Martin, on her counterclaim, a judgment against Franklin in the amount of $3,258.00.

Under the facts of this case, Donna Kay Martin, by contract entered into on January 28, 1995, purchased a new mobile home from Franklin. In addition to the purchase price and various fees, Martin purchased from Franklin certain optional equipment, accessories, and service. Included in the service which Martin acquired from Franklin was to dig and provide for the concrete setup of the home, install a brick foundation skirt around the home, and to level, strap, and anchor the home.

Under the motion for judgment, Franklin asserts that it fulfilled its contract to deliver and install the mobile home and that Donna Kay Martin

failed to pay the purchase price. Martin, in her answer and counterclaim, asserts that Franklin breached its contract which caused her to be damaged.

Martin asserts that, with respect to the actual mobile home structure, there were several deficiencies such as cracks in the walls and windows and doors out of line. The Court finds that, with respect to the actual mobile home, there was substantial compliance with the contractual requirements and that Martin's complaints could have been remedied at a minimal cost. The Court finds, however, that Franklin failed to install the mobile home in a good and workmanlike manner and with the degree of skill equal to the undertaking. This failure constituted a substantial breach of the contract.

In the instant case, Franklin failed to install the piers of sufficient height and therefore caused the mobile home to be set too low to the grade of the front yard. This not only created an aesthetic problem, but also created water drainage problems both under the mobile home and probably inside the mobile home. The Court also finds that the foundation of the brick skirt around the exterior of the mobile home was not sufficiently deep to comply with the frost line requirements for construction in the Central Virginia area. This condition would eventually, through the freeze/thaw cycle, cause the foundation to collapse and probably cause the mobile home not to be level.

Franklin argues that the contract specifically excludes any warranties by Franklin, the seller, and limits the damages to either the lesser of the costs of the repairs or the reduction in market value. Franklin is, in essence, relying upon the provisions of paragraphs 10, 11, and 12 on the back page of the contract. This Court rules that paragraphs 10, 11, and 12 apply to the mobile home structure which is, of course, a "good" subject to the Uniform Commercial Code, Section 8.1 *et seq.* of the Code of Virginia. These contractual paragraphs, and the Uniform Commercial Code, do not control the matters of delivery and placement of the mobile home, which were the responsibility of Franklin.

In paragraph 17 of the contract, it is provided that Franklin does "not guarantee proper placement unless a concrete pier, running below the frost line, has first been prepared." The evidence establishes that not only were concrete piers below the frost line prepared, but that Franklin was employed to install these piers. Under the common law of Virginia, it is held that, in building and construction contracts, "it is implied that the building shall be erected in a reasonably good and workmanlike manner and, when completed, shall be reasonably fit for the intended purpose." *Mann v. Clowser*, 190 Va. 887, 901, 59 S.E.2d 78 (1950). The Court in *Mann v. Clowser*, at page 901, further held that, where an entity undertakes particular work, it "impliedly agrees to exercise a degree of skill equal to the undertaking. . . ." Further, the Court states that the term "workmanlike manner" means "in accordance with

good usage and accepted practices in the community in which the work is done."

In the instant case, Franklin undertook employment to place the mobile home on the premises. It charged a fee for this service. Franklin, accordingly, must exercise a proper degree of care and skill for this service. Martin was a consumer who certainly had no expertise in these matters. Therefore, it was the duty of Franklin to install the mobile home on piers of sufficient height.

Franklin asserts that Martin instructed Franklin as to the height of the mobile home. While the Court does not find that Martin gave Franklin this instruction, even if she had given the instruction, it would have been the duty of Franklin to make a full and fair disclosure of the consequences. There is no evidence that Franklin made any full and fair disclosure of the consequences. In *Mann v. Clowser*, 190 Va. 887, 902-03, 59 S.E.2d 78 (1950), the Supreme Court of Virginia held that, where the consequences of a change are so obvious or well known to the contractor or builder, from his experience or the nature of the undertaking, it is the duty of the contractor to make a full disclosure of the consequences. In this case, there is no evidence that the contractor made any disclosure of the consequences of setting the mobile home on piers of the height installed by Franklin.

As noted above, there was also an additional substantial breach of the contract by the failure of Franklin to install the foundation of the brick skirt so that it extended beyond the frost line of 18 inches below the ground surface. By virtue of this, the brick skirt would have both collapsed and probably pushed up to affect the stability and level of the mobile home.

Accordingly, by virtue of these substantial breaches of contract, Franklin cannot recover from Martin.

As noted above, the Court is granting to Martin a judgment for her damages based upon her counterclaim. As set forth in Defendant's Exhibit "Y", Martin is seeking to recover $14,864.83. The only legitimate item of damage is the trade-in on her own mobile home in the sum of $5,500.00. Because she repudiated the contract with Franklin, but did not surrender the mobile home for a lengthy period of time, Franklin should have an offset for the interest and insurance that it incurred. As set forth on Plaintiff's Exhibit "A", the amount of finance charges and interest was $1,992.00, and the amount of the insurance was $250.00. The total is $2,242.00. This should be deducted from the $5,500.00 to arrive at a judgment of $3,258.00 in favor of Martin.

The Court does not grant to Martin a judgment for the excavation to set the mobile home or the excavation to rework the property because it has not been established whether this benefited the real estate. If it benefited the real

estate, then she suffered no damage. The real measure of damage is to submit evidence on the reduction in value of the real estate. This was not done. Therefore, she cannot recover for these items. Also, she cannot recover for the brick masonry to replace the brick wall because that expense has not been incurred. Also, she cannot recover for the electricity, water/sewer, rent, insurance, or cable hookup because it was by her own decision that she prevented Franklin from taking back the mobile home after she repudiated the contract. Therefore, she chose to incur these expenses and did not mitigate her damages.