COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Clements and Haley
Argued at Chesapeake, Virginia


WILLIAM K. LENNON, D.D.S.

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0745-07-1                      JUDGE ROBERT J. HUMPHREYS
                                                         DECEMBER 27, 2007

VIRGINIA BOARD OF DENTISTRY


              FROM THE CIRCUIT COURT OF MATHEWS COUNTY
                        Randolph T. West, Judge Designate

            Kenneth T. Roeber (Sands Anderson Marks & Miller, on brief), for
            appellant.

            Howard M. Casway, Senior Assistant Attorney General (Robert F.
            McDonnell, Attorney General; David E. Johnson, Deputy Attorney
            General; Jane D. Hickey, Senior Assistant Attorney General, on
            brief), for appellee.


        William K. Lennon, D.D.S. ("Lennon") appeals from a decision of the Circuit Court of

Mathews County ("circuit court") affirming the decision by the Virginia Board of Dentistry ("the

Board") to revoke his license to practice dentistry.  Lennon argues that (1) the circuit court erred

in holding that the Board was not required to file an answer within 21 days of being served with

Lennon's petition for appeal; (2) the Board's findings of fact were not supported by substantial

evidence; (3) the Board deprived him of substantive due process of law; and (4) the Board erred

by admitting evidence of complaints made by Lennon's patients to other doctors.  For the

following reasons, we hold that the circuit court did not err in accepting the Board's answer and

that the Board's findings of fact were supported by the evidence.  We do not address Lennon's

other arguments because Rule 5A:20(e) bars our consideration of those issues.

─────────────────

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.  Analysis

A.  Timeliness of the Board's Answer

Lennon argues first that the circuit court erred in denying his motion to strike and motion for a default judgment.  Lennon contends that he was entitled to a default judgment pursuant to Rule 3:8 and Rule 3:19 because the Board did not file a response within 21 days of being served with Lennon's petition for appeal.  The Board responds that it was not required to respond within 21 days because Rule 3:8 does not apply to administrative appeals.  We need not address whether Rule 3:8 applies to administrative appeals because, assuming without deciding that Rule 3:8 applied, the circuit court did not abuse its discretion by accepting the Board's response one day late.

Rule 3:8 requires that a defendant file responsive pleadings within 21 days after being served with the complaint.  Under Rule 3:19, "[a] defendant who fails to timely file a responsive pleading as prescribed in Rule 3:8 is in default."  The Board received service of Lennon's petition for appeal on February 24, 2006.  Assuming Rule 3:8 applied, the Board's responsive pleading was due on Friday, March 17, 2006.  The Board did not file its response until Monday, March 20, 2006, making it one day late and potentially placing the Board in default.

The Supreme Court has held that the purpose for

> prescribing a time within which a defendant may and shall file his answer or other defense, is not to cut off the orderly presentation of defenses, or to set a trap for the unwary defendant by which a plaintiff may by delaying the prosecution of his cause cut off the defendant from a full defense or escape the necessity of proving his case.  Its purpose is to prevent unconscionable delay in an orderly procedure . . . being caused by dilatory tactics on the part of the defendant or by the neglect of the defendant, where the plaintiff has shown due diligence on his part in the prosecution of the cause.

Worsham v. Nadon, 156 Va. 438, 446, 157 S.E. 560, 562 (1931). In keeping with that purpose, Rule 1:9 provides that "[t]he time allowed for filing pleadings may be extended by the court in its discretion and such extension may be granted although the time fixed already has expired . . . ."

In Emrich v. Emrich, 9 Va. App. 288, 293, 387 S.E.2d 274, 276 (1989), this Court cited several "circumstances which support the exercise of discretion to extend the time for filing." Those circumstances include

> lack of prejudice to the opposing party, the good faith of the moving party, the promptness of the moving party in responding to the opposing parties' decision to progress with the cause, the existence of a meritorious claim or substantial defense, the existence of legitimate extenuating circumstances, and the justified belief that suit has been abandoned or will be allowed to remain dormant on the docket.

Id. (internal citations omitted). However, that list "[c]learly . . . is not exhaustive or necessarily determinative; the application of the rule 'rests within the sound judicial discretion of the trial court, it being impossible to lay down a rule which will be binding in all cases.'" Id. (quoting Eagle Lodge v. Hofmeyer, 193 Va. 864, 870, 71 S.E.2d 195, 198 (1952)).

Lennon argues that the circuit court abused its discretion, claiming that he was prejudiced by the Board's late filing. He contends that the delay deprived him of "the economic and non-economic rewards of practicing a profession to which he has dedicated the vast majority of his lifetime." We disagree. The Board filed its response one business day after the Rule 3:8 deadline. Lennon has not presented any evidence to show that one business day caused a delay of any kind in the remainder of the proceedings. In fact, Lennon himself caused the only delay that resulted from the Board's late filing when he made a motion to strike the Board's answer. There is no evidence that, had Lennon not filed his motion to strike, the remainder of the proceedings would have been delayed by a single day, if at all. Because there is no reason to

- 3 -

believe that extending the Board's deadline by one day would have delayed the remainder of the proceedings, Lennon was not prejudiced by the extension.

Consequently, we need not decide today whether Rule 3:8 applies to administrative appeals because, assuming without deciding that Rule 3:8 applied, the circuit court did not abuse its discretion in extending the time allowed for the Board to file its answer because the one-day delay did not prejudice Lennon.

### B.  Sufficiency of the Evidence

Lennon argues next that the evidence did not support several of the Board's findings of fact.  Specifically, Lennon claims that the Board made erroneous findings regarding his failure to complete the continuing education requirements of the 2002 and 2003 orders, his failure to comply with the 2003 order's requirement that he obtain a practice monitor, and his treatment of Patient A and Patient B.  We disagree, finding that the record before us substantially supports the Board's findings of fact.

Code § 2.2-4027 of the Administrative Process Act defines the limited role of a court in reviewing the factual findings of an administrative agency:

> When the decision on review is to be made on the agency record, the duty of the court with respect to issues of fact shall be limited to ascertaining whether there was substantial evidence in the agency record upon which the agency as the trier of the facts could reasonably find them to be as it did.

"The 'substantial evidence' standard, adopted by the General Assembly, is designed to give great stability and finality to the fact-findings of an administrative agency.  The phrase 'substantial evidence' refers to 'such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion.'"  Virginia Real Estate Comm'n v. Bias, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)) (emphasis in original).  "'Under this standard, . . . the court may reject the agency's findings of

fact only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion.'" Aegis Waste Solutions, Inc. v. Concerned Taxpayers of Brunswick City., 261 Va. 395, 404, 544 S.E.2d 660, 665 (2001) (quoting Bias, 226 Va. at 269, 308 S.E.2d at 125). For the following reasons, we hold that the Board's findings of fact are supported by substantial evidence.

Substantial evidence supports the Board's finding that Lennon did not comply with the continuing education requirements of the 2002 and 2003 orders. Both orders required Lennon to submit a syllabus of each continuing education course to the Board at least 15 days prior to the course and submit proof of completion of each course to the Board. The record clearly shows that Lennon failed to either submit the syllabus 15 days in advance or submit proof of completion for all but one of the courses. By failing to properly document the courses he attended, Lennon failed to comply with the orders of the Board.

Substantial evidence also supports the Board's finding that Lennon did not comply with the 2003 order's requirement that he obtain a practice monitor. The 2003 order required Lennon to "submit for approval to the Executive Director of the Board the name and *curriculum vitae* of a practitioner licensed in the Commonwealth of Virginia who has agreed to serve as a practice monitor" within 45 days of the order. Lennon attempted to comply with the order when Dr. Marshall England notified the Board, at Lennon's request, that he would be willing to serve as Lennon's practice monitor. However, Dr. England's license was inactive and he was planning to retire. Thus, the Board determined he was no longer a "practitioner licensed in the Commonwealth of Virginia." Lennon did not submit any other names to the Board. Therefore, the record supports the Board's finding that Lennon failed to comply with the 2003 order.

Finally, substantial evidence likewise supports the Board's findings of fact regarding Lennon's treatment of Patient A and Patient B. In regard to Patient A, the Board found:

> On or about July 2, 2004, without consulting or obtaining consent from Patient A's guardian, Dr. Lennon removed caries and debris from tooth #20 and filled the tooth without using an anesthetic. The filling that Dr. Lennon placed fell out approximately six (6) weeks later and was replaced by another dentist, who stated that it was necessary to use an anesthetic to perform his treatment.

Lennon does not dispute that he filled Patient A's tooth, that he did so without an anesthetic, and that the tooth fell out six weeks later. He only disputes that he filled Patient A's tooth without consent of her guardian and that it was necessary for the second dentist to use anesthetic.

At the hearing before the Board, Don Whiting, Patient A's guardian, testified that he took Patient A to Lennon for a routine examination. Whiting testified that Lennon never spoke to him prior to filling Patient A's tooth. In fact, Whiting testified that he "never met Dr. Lennon before the preliminary hearing." Also at the hearing, the Board admitted into evidence a written summary of an interview of Dr. Joseph Lombard by a Department of Health investigator. Dr. Lombard is the dentist who treated Patient A after her filling fell out. In the interview, Dr. Lombard stated that he "felt it was necessary to anesthetize [Patient A] for the procedure" and that "she would not have tolerated the procedure without it."

In regard to Patient B, the Board found:

> On or about September 17, 2007, Patient B, a thirteen year-old, presented to Dr. Lennon's office for a routine examination. During that visit, Dr. Lennon took x-rays, cleaned the teeth, applied sealant to some teeth, and gave the patient a fluoride treatment. When Dr. Lennon was taking the x-rays, the patient attempted to remove the film from her mouth, but Dr. Lennon slapped her hand and forced the film back into place. Additionally, when Patient B tried to expectorate some of the fluoride treatment, Dr. Lennon placed his finger inside the patient's mouth and used his finger to lead her to sit back in the chair.

The Board based its findings of fact on Patient B's testimony regarding the September 17 examination. On appeal, Lennon argues that Patient B was not credible and that the Board erred in relying on her testimony. However, "[i]t is within the province of the finder of fact 'to assess

- 6 -

the credibility of the witnesses and the probative value to be given their testimony.'" Mercer v. Commonwealth, 259 Va. 235, 242, 523 S.E.2d 213, 217 (2000) (quoting Richardson v. Richardson, 242 Va. 242, 246, 409 S.E.2d 148, 151 (1991)). The "fact finder [] sees and hears the witnesses and, therefore, is better able to determine their credibility and weigh their testimony." Patterson v. Patterson, 257 Va. 558, 564, 515 S.E.2d 113, 116 (1999). The Board saw and heard the testimony of all of the witnesses. As the fact finder, it was the Board's task to resolve issues of credibility and conflicts in the testimony. The testimony of Don Whiting and Patient B, along with Dr. Lombard's statements, are substantial evidence supporting the Board's factual findings, and we will not disturb those findings on appeal.

In sum, we hold that substantial evidence supports each of the Board's factual findings. Because its findings were supported by substantial evidence, we hold that the Board's factual findings were not erroneous.

### C. Procedural Default

In his third and fourth questions presented, Lennon claims that the revocation of his license deprived him of substantive due process of law and that the Board erred by admitting evidence of complaints made by Lennon's patients to other doctors. In his brief, Lennon failed to provide any legal authority or principles of law to support his arguments as to how the Board violated his due process rights or how the Board erred by admitting evidence of complaints by his former patients. In arguing that the Board deprived him of due process, Lennon cites three cases, none of which relate to the specific issue he presents. He cites two of those cases for the proposition that a license to practice medicine is property. He cites the third case for the proposition that "agency decisions serve a 'judicial' or 'quasi-judicial' function." He cites no authority that supports his argument that the Board violated his due process rights. Furthermore, in the section of his brief in which he argues that the Board erred in admitting certain evidence,

- 7 -

he does not cite a single case. Rule 5A:20(e) requires the appellant's opening brief to contain "[t]he principles of law, the argument, and the authorities relating to each question presented." Under Rule 5A:20(e), "'[s]tatements unsupported by argument, authority, or citations to the record do not merit appellate consideration.'" Roberts v. Roberts, 41 Va. App. 513, 527, 586 S.E.2d 290, 297 (2003) (quoting Ryan's Family Steak Houses v. Gowan, 32 Va. App. 459, 464, 528 S.E.2d 720, 723 (2000)). Because Lennon failed to develop or support either of these arguments in his brief, they constitute little more than bare assertions and we will not address them. See Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).

## II. Conclusion

For the foregoing reasons, we hold that the Board's answer was timely and that substantial evidence supports the Board's factual findings. We do not address Lennon's final two arguments because they are procedurally defaulted, and we affirm the decision of the circuit court.

Affirmed.